UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

SLEEPY LAGOON, LTD., et al.        )
                                   )
            Plaintiffs,            )
                                   )
v.                                 )          Case No. 11-CV-0323-CVE-PJC
                                   )
TOWER GROUP, INC.,                 )
                                   )
            Defendant.             )

## OPINION AND ORDER

Now before the Court is the Brief of Defendant Tower Group, Inc. in Support of Motion to

Dismiss or Transfer Venue (Dkt. ## 16, 18).  Defendant Tower Group, Inc. (Tower) asks the Court

to dismiss the case for lack of personal jurisdiction or improper venue or, in the alternative, to

transfer this case to the United States District Court for the Southern District of New York.  Dkt. #

16, at 5.  Plaintiffs respond that the Court has personal jurisdiction over Tower and Tower has not

met its burden to show that plaintiffs' chosen forum is inconvenient.  Dkt. # 27, at 6-7; Dkt. # 28,

at 2.

## I.

Plaintiffs formerly owned stock in Preserver Group, Inc. (Preserver) and entered a stock

purchase agreement (SPA) with Tower for sale of their ownership interest in Preserver.  Plaintiffs

Sleepy Lagoon, Ltd. and McWhorter Family Trust were created under the laws of Texas, and

plaintiff Gail McWhorter resides in Texas.  Dkt. # 2, at 1-2.  Plaintiff Alvin E. Swanner resides in

Louisiana, and Brion Properties is a partnership created under Louisiana law with its principal place

of business in Louisiana.  Id. at 2.  Plaintiff William E. Lobeck, Jr. is an individual residing in

Oklahoma, and the William E. Lobeck, Jr. Trust and Kathryn L. Taylor Trust were created under

Oklahoma law.  Id. Tower is a Delaware corporation with its principal place of business in New York City, New York.  Id., Dkt. # 16, at 6.  Preserver formerly owned all of the stock of Preserver Insurance Company, and Preserver Insurance Company is licensed to conduct business in several states. Preserver Insurance Company is licensed to conduct business in Oklahoma, but it did not conduct business in Oklahoma when the parties initially entered negotiations for the sale of Preserver's stock and did not become licensed to sell insurance in Oklahoma until November 2008. Dkt. # 16-1, at 5.

Tower states that it does not conduct business in Oklahoma and does not solicit business from Oklahoma residents.  Dkt. # 16, at 6-7.  Tower's Chairman of the Board, President, and Chief Executive Officer, Michael H. Lee, states that Tower does not own or lease property located in Oklahoma and it does not maintain any type of presence in this state.  Dkt. # 16-1, at 3.  Lee further claims that Tower does not send its employees to Oklahoma for any purpose and Tower does not visit potential customers in Oklahoma.  Id.  Plaintiffs have provided a copy of Tower's 2010 Annual Report in which Tower states that "we conduct business in all 50 states and in the District of Columbia through 20 offices across the U.S. and in Bermuda."  Dkt. # 27-1, at 3.  The 2010 Annual Report describes Preserver Insurance Company as an operating subsidiary of Tower and states that "through our Insurance Subsidiaries [ ] we offer a broad range of commercial, personal and specialty property and casualty insurance products and services to businesses in various industries and to individuals throughout the United States."  Id. at 6.  Tower explains that "we" is used to mean Tower and its subsidiaries, and references to "we," "us," or "our" in the 2010 Annual Report may not refer to the direct activities of Tower.  Dkt. # 27-1, at 6; Dkt. # 31-1, at 2.

2

Tower negotiated with plaintiffs for the sale of their ownership interest in Preserver, but the parties dispute whether plaintiffs or Tower initiated negotiations for the sale of plaintiffs' stock holdings in Preserver.  Tower states that it "did not seek out either Preserver or the Sellers, and had no intention to conduct business in the State of Oklahoma."  Dkt. # 16, at 7.  Lee states that executives of Preserver, on behalf of plaintiffs, approached Tower with an offer to sell their stock. Dkt. # 16-1, at 4.  According to Lee, the negotiations took place in New York and New Jersey and Tower did not send a representative to Oklahoma to negotiate with plaintiffs or their attorneys.  Id. He states that "[d]uring the time leading up to execution of the [SPA] Tower Group had some communications with representatives of the Sellers by telephone, facsimile, mail, and/or e-mail," but he does not specify who was involved in these communications or where the communications were directed.  Id.  Plaintiffs present a different story about the initiation of negotiations between the parties.  Patrick J. Haveron, former President and Chief Executive Officer of Preserver, states that Lee contacted him about possible employment with Tower and Lee inquired about the possibility of Tower acquiring Preserver.  Dkt. # 27-2, at 1.  Haveron advised Preserver's Board of Directors (the Board) about Tower's interest in acquiring Preserver, and the Board voted to pursue a more formal process in which Tower and other interested bidders could submit offers to purchase Preserver.  Id. at 2.  Haveron states that he disclosed to Tower information about each of the plaintiffs, including their state of residency, and Tower was aware that it would be contracting with parties in Oklahoma, Texas, and Louisiana.  Id.

Tower submitted a proposed purchase price to the Board, and the Board agreed to negotiate exclusively with Tower.  Id.  Tower drafted a proposed SPA and submitted it to Preserver. Preserver's shareholders rejected Tower's proposed SPA but invited Tower to submit a revised SPA.

3

Id. Tower provided a new draft of the SPA to the Board in August 2006. Id. The parties executed the final version of the SPA on November 13, 2006. Dkt. # 2-1, at 2. The parties agreed that "THIS AGREEMENT SHALL BE CONSTRUED, INTERPRETED AND THE RIGHTS OF THE PARTIES DETERMINED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE CONFLICT OF LAW PRINCIPLES THEREOF." Dkt. # 2-2, at 37. The SPA required the parties to engage in post-closing activities and it was anticipated that the parties would continue to have contact. In particular, the parties agreed that a final payment would be made following a determination of the final base purchase price, and this would require payment by the buyer to the seller, or vice versa, depending on the final base purchase price determined by an accountant. Dkt. # 2-1, at 19-22. Tower agreed to provide various documents and information to plaintiffs during this process, and the parties created a dispute resolution procedure requiring continued communication between the parties and their legal representatives if they could not agree on a final base purchase price. Id. at 20-21. The parties also agreed that plaintiffs might be entitled to a contingent additional purchase price in an amount to be determined after March 31, 2010. Id. at 23. Each party designated a legal representative to receive notices and communications following execution of the SPA and plaintiffs requested to receive notice through the law firm of Crowe & Dunlevy in Oklahoma City, Oklahoma. Dkt. # 2-2, at 35.

Tower did communicate with the plaintiffs through their Oklahoma counsel by email, letter, and telephone. Tower's Senior Vice President and General Counsel, Stephen Kibblehouse, sent notices to or communicated with plaintiffs' Oklahoma counsel at least 16 times between August 2007 and March 2008. Dkt. # 27-3; Dkt. # 27-4. Tower's outside counsel, Ruth Oren, also sent emails to or called plaintiffs' Oklahoma counsel at least six times in 2010, and these

4

communications relate to the possible payment of additional purchase price by Tower.  Dkt. # 27-5.

Tower acknowledges that these communications occurred but states that, from its perspective, none

of the post-closing activities occurred in Oklahoma.  Dkt. # 16, at 8.  Tower claims that "[n]one of

the knowledgeable personnel or records relevant to such activities are located in the State of

Oklahoma" and all persons and records meeting this description are located in New York or New

Jersey.  Id. at 8.

Plaintiffs state that the final reserve measurement date used to determine whether any

additional purchase price was owed to plaintiffs was March 31, 2010, and they claim that Tower

unilaterally changed the accounting method to calculate Preserver's reserve of losses and loss

adjustment expenses. Dkt. # 2, at 4.  They allege that Tower's decision to change accounting

methodology has prevented them from obtaining an independent calculation of the additional

purchase price.  Id. at 5.  Plaintiffs submitted their own calculation of Preserver's reserve to Tower

and demanded that Tower pay them $5,222,925.50 plus interest, but Tower refused to pay plaintiffs

any additional purchase price.  Id. at 6.  On May 25, 2011, plaintiffs filed this case seeking to

recover the additional purchase price, any expenses and attorney fees incurred to obtain the

additional purchase price, and declaratory relief.  Id. at 7-8.  Defendant filed a motion (Dkt. ## 16,

18) to dismiss this case for lack of personal jurisdiction or improper venue, in the alternative, to

transfer this case to the Southern District of New York.

## II.

As to the motion to dismiss for lack of personal jurisdiction, plaintiffs bears the burden of

establishing that the Court has personal jurisdiction over the defendant.  OMI Holdings, Inc. v.

Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998).  "When a district court rules on a

Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a <u>prima facie</u> showing of personal jurisdiction to defeat the motion." <u>Id.</u> (citations omitted). "The plaintiff may make this <u>prima facie</u> showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." <u>Id.</u> at 1091. "In order to defeat a plaintiff's <u>prima facie</u> showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" <u>Id.</u> (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. <u>Taylor v. Phelan</u>, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in plaintiffs' favor and a <u>prima facie</u> showing of personal jurisdiction is sufficient to overcome defendant's objection. <u>Id.</u>

As to defendant's motion to transfer venue under 28 U.S.C. § 1404, defendant bears the burden to establish that plaintiffs' chosen forum is inconvenient, and plaintiffs' choice of forum is given considerable weight. <u>Scheidt v. Klein</u>, 956 F.2d 963, 966 (10th Cir. 1992). A court should not transfer venue merely to shift the inconvenience of litigating from one party to another, and the party seeking a transfer of venue must make a strong showing that the forum is inconvenient. <u>Employers Mut. Cas. Co. v. Bartile Roofs</u>, 618 F.3d 1153, 1168 (10th Cir. 2010). When reviewing a motion to transfer venue under § 1404, a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party. <u>Huang v. Napolitano</u>, 721 F. Supp. 2d 46, 48 n.3 (D.D.C. 2010); <u>United States v. Gonzalez & Gonzales Bonds and Ins. Agency, Inc.</u>, 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010).

## III.

Defendant asks the Court to dismiss this case for lack of personal jurisdiction or improper venue or, in the alternative, to transfer this case to the Southern District of New York.  Dkt. # 16. Plaintiffs respond that the Court may exercise general or specific personal jurisdiction over defendant, and the Court should honor plaintiffs' choice of forum due to the lack of evidence that the Southern District of New York would be substantially more convenient for the parties and witnesses.  Dkt. ## 27, 28.

## A.

Defendant argues that the Court lacks personal jurisdiction over it.  Defendant claims that it does not have continuous and systematic contacts with Oklahoma to justify the assertion of general jurisdiction over it, and defendant may not be haled into court in Oklahoma due merely to the fact that three of the plaintiffs happen to reside in Oklahoma.  Dkt. # 16, at 10-15.  Plaintiffs respond that defendant holds itself out as an insurance company doing business in Oklahoma, and defendant is subject to general jurisdiction in Oklahoma.  Dkt. # 27, at 14-17.  Plaintiffs also argue that their claims arise out of defendant's contacts with Oklahoma, and the Court should exercise specific jurisdiction over defendant.

To demonstrate the existence of personal jurisdiction over a nonresident defendant in a diversity action, plaintiffs must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution.  See OKLA. STAT. tit. 12, § 2004(F).  "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry."  Intercon, Inc. v. Bell Atl. Internet

Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d

1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the

forum state are such that the nonresident could reasonably anticipate being haled into court in that

state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  "The Due Process Clause permits the

exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum

contacts between the defendant and the forum State.'"  Intercon, 205 F.3d at 1247 (quoting World-

Wide Volkswagen, 444 U.S. at 291).  The existence of such minimum contacts must be shown to

support the exercise of either general jurisdiction or specific jurisdiction.  A court "may, consistent

with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has

purposefully directed his activities at the residents of the forum, and the litigation results from

alleged injuries that arise out of or relate to those activities.'"  Id. at 1247 (quoting Burger King

Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).  "When a plaintiff's cause of action does not arise

directly from a defendant's forum related activities, the court may nonetheless maintain general

personal jurisdiction over the defendant based on the defendant's business contacts with the forum

state." Id. at 1247 (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 &

n.9 (1984)).

Plaintiffs argue that the Court has general personal jurisdiction over defendant because

defendant holds itself out as an insurance company conducting business in all 50 states and it would

be reasonable to subject defendant to personal jurisdiction in Oklahoma.  Plaintiffs rely on

defendant's 2010 Annual Report and argue that defendant conducts business in Oklahoma through

its subsidiaries, and defendant claims that it exercises extensive control over its subsidiaries. Dkt. # 27, at 15-16. Plaintiffs cite Pro Axess, Inc. v. Orlux Distribution, Inc., 428 F.3d 1270 (10th Cir. 2005), for the proposition that "[c]ompanies conducting business through their subsidiaries can qualify as transacting business in a state, provided the parent exercises sufficient control over the subsidiary." Id. at 1278. Based on statements in defendant's 2010 Annual Report, plaintiffs ask the Court to disregard Lee's statements that defendant does not conduct business in Oklahoma or, in the alternative, allow plaintiffs to conduct jurisdictional discovery to resolve an alleged discrepancy between Lee's statements and defendant's 2010 Annual Report. Dkt. # 27, at 24-25.

The Court does not have general personal jurisdiction over defendant. Because general jurisdiction does not involve contacts with the forum state directly related to the lawsuit, "courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'" OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)). Defendant has presented evidence - Lee's declaration - that it does not directly conduct business in Oklahoma and that it is not licensed to sell insurance in Oklahoma. Dkt. # 16-1, at 2-3. Plaintiffs ask the Court to disregard this evidence based on statements in defendant's 2010 Annual Report, but plaintiffs' argument is speculative and is based on a mischaracterization of defendant's representations. The 2010 Annual Report clearly states that "we" or other collective pronouns refer to defendant and its subsidiaries, and nothing in the 2010 Annual Report contradicts Lee's declaration that Tower does not directly conduct business in Oklahoma. More importantly, the document does not specifically describe any contacts that defendant's subsidiaries have with Oklahoma, and there is no way for the Court to determine even

9

if any of defendant's subsidiaries would be subject to general jurisdiction in Oklahoma.  The Court

will not speculate that defendant or its subsidiaries are subject to general jurisdiction in Oklahoma

based on vague representations in the 2010 Annual Report, and plaintiffs must show that the Court

has specific jurisdiction over defendant.[1]

Plaintiffs argue that the Court may exercise specific jurisdiction over defendant based on

defendant's decision to enter a contract with Oklahoma residents and defendant's post-closing

contacts with Oklahoma.  Dkt. # 27, at 17.  For a court to exercise specific jurisdiction over a

nonresident defendant, a plaintiff must show that "the defendant has 'purposefully availed itself of

the privilege of conducting activities or consummating a transaction in the forum state'" and that

"the litigation results from alleged injuries that arise out of or relate to those activities."  Employers

Mut. Cas. Co., 618 F.3d at 1160.  In a contract case, a court should consider "prior negotiations and

contemplated future consequences, along with the terms of the contract and the parties' actual course

of dealing."  AST Sports Science, Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1058 (10th Cir.

2008).

The parties have offered conflicting evidence as to whether plaintiffs or defendant initiated

negotiations for the sale of Preserver.  Defendant claims that plaintiffs and Preserver sought out the

defendant and initiated the negotiations.  Dkt. # 16, at 12.  Plaintiffs respond that Tower executives

approached Preserver's president, Haveron, about the possibility of purchasing Preserver, and that

Tower was put on notice that it would be negotiating with residents of Texas, Louisiana, and

---

[1]     If the Court determines that it lacks specific jurisdiction over defendant, it will consider
plaintiffs' request for leave to conduct limited jurisdictional discovery.  However, if the
Court finds that it has specific jurisdiction over defendant, it will not be necessary to reach
this issue.

Oklahoma.  Dkt. # 27, at 18.  At this stage of the litigation, the Court must construe contested evidence in favor of plaintiffs, and the Court will find for the purpose of ruling on this motion that defendant knowingly initiated negotiations with Oklahoma residents for the sale of Preserver.  AST Sports Science, 514 F.3d at 1058.  The parties do not dispute that many or all of the actual negotiations occurred in New York or New Jersey, but there is sufficient evidence to show that defendant knew it would be entering a contract with at least three Oklahoma residents and that defendant initiated the negotiation process.  This supports plaintiffs' argument that defendant purposefully availed itself of the right to conduct a business transaction with Oklahoma residents.

Plaintiffs have also identified two post-closing activities that were part of the SPA and argue that defendant knew it would have ongoing dealings with Oklahoma residents following execution of the SPA.  First, the parties agreed to exchange information after execution of the SPA to determine the final base purchase price, and the parties agreed to a notice provision requiring defendant to send notice to plaintiffs through their counsel located in Oklahoma.  Dkt. # 2-1, at 19; Dkt. # 2-2, at 35.  Second, the parties agreed to determine whether plaintiffs would be entitled to an additional purchase price some time after March 31, 2010, and contemplated that additional negotiations or dispute resolution could be required as to this aspect of the SPA.  Dkt. # 2-1, at 23-27.  Defendant responds that "all of these 'contacts' are attributable to nothing more than sheer fortuity that some of the Plaintiffs and their legal counsel happen to reside here [and] [a]s such, they do not and cannot constitute purposeful availment of this forum by [defendant]."  Dkt. # 31, at 6-7 (emphasis omitted).

Plaintiffs are correct that the Tenth Circuit requires this Court to consider the contemplated future consequences of the parties' contract, and this supports plaintiffs' argument that defendant

purposefully availed itself of the privilege of conducting business in Oklahoma.  See AST Sports Science, 514 F.3d at 1058.  In fact, the key dispute in this lawsuit is whether plaintiffs are entitled to the additional purchase price, and this was part of post-closing negotiations contemplated in the SPA.  Defendant argues that plaintiffs' claims do not arise out of any activities directed toward Oklahoma, because few of the parties post-closing communications mentioned the additional purchase price. Dkt. # 31, at 11.  However, defendant takes a one-sided view of the parties' post-closing communications, and it is clear that defendant knew it would be dealing with plaintiffs' legal representative located in Oklahoma if any disputes arose as to payment of the additional purchase price.  Defendant argues that the only contacts mentioning the additional purchase price occurred in 2010 and this does not show that the parties had regular interaction about this issue.  Dkt. # 31, at 10-11. However, defendant fails to mention that the additional purchase price could not be calculated until after March 31, 2010, and it is reasonable to infer that the parties would not have regular negotiations about this issue until the time arose to determine whether plaintiffs were entitled to the additional purchase price.  It is clear that the case has arisen out of defendant's post-closing contacts with the Oklahoma plaintiffs.

The Court finds that it has specific jurisdiction over defendant.  Defendant initiated negotiations with a group of shareholders and continued the negotiations after learning that at least three of the shareholders were residents of Oklahoma.  Defendant knew that the shareholders designated Oklahoma counsel to receive notices and communications, and this implies that defendant knew it would be resolving any disputes arising out of post-closing activities with the shareholders' Oklahoma counsel.  The parties continued to communicate after the SPA was executed and at least six of these communications concerned the payment of the additional purchase price.

The parties are now disputing whether Tower owes plaintiffs any additional purchase price.  This shows that the parties engaged in a course of prior negotiations and continued to communicate post-closing about the subject matter of this case, and plaintiffs have shown that defendant directed communications to Oklahoma specifically relating to plaintiffs' claims.  These contacts are sufficient to show that defendant purposefully availed itself of the right to conduct business with Oklahoma residents and that defendant's contacts with plaintiffs and their Oklahoma counsel relate to the subject matter of this case, and the Court may exercise specific personal jurisdiction over defendant.

Even though the Court has found that it has personal jurisdiction over defendant, the Court must also consider whether the assertion of personal jurisdiction over defendant "comport[s] with 'fair play and substantial justice.'"  Trujillo v. Williams, 465 F.3d 1210, 1221 (10th Cir. 2006) (quoting Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1359 (10th Cir. 1990)).  The Court must consider five factors to determine if the exercise of personal jurisdiction over defendant would be reasonable:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

Id. (quoting Pro Axess, 428 F.3d at 1279-80).  The Tenth Circuit has stated that a defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable" and "[s]uch cases are rare."  Rusakiewicz v. Lowe, 556 F.3d 1095, 1102 (10th Cir. 2009).  The reasonableness prong of the due process inquiry "evokes a sliding scale," and a defendant may need less to defeat a showing of personal jurisdiction if the plaintiff's showing of

minimum contacts is relatively weak.  <u>TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.</u>, 488 F.3d 1282, 1292 (10th Cir. 2007).

Plaintiff has made a relatively strong showing that defendant is subject to personal jurisdiction in Oklahoma, and defendant must present a compelling argument that it would be unreasonable for this Court to exercise personal jurisdiction over it.  Defendant argues that it would be subject to a significant burden if it were forced to litigate in this forum, because travel between New York and Oklahoma is expensive and most of the witnesses and documents relevant to this case are located in New York or New Jersey.  Dkt. # 16, at 16.  However, "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."  <u>Pro Axess</u>, 428 F.3d at 1280 (quoting <u>Burger King</u>, 471 U.S. at 474).  This is primarily an accounting dispute that is not dependent on the testimony of defendant's employees or representatives, and there is a reduced need for travel between New York and Oklahoma because of the nature of the litigation.  The Court also notes that the parties are from at least four different states - Oklahoma, Texas, Louisiana, and New York - and there will be some inconvenience and expense for some or all of the parties regardless of where the case is litigated, and defendant's argument that it will be inconvenienced by defending against plaintiffs' claims in this Court is not compelling.

Defendant argues that Oklahoma has little interest in resolving a contract dispute governed by New York law, although it admits that Oklahoma does have an interest in providing a forum for its residents to seek redress for injuries allegedly caused by an out-of-state actor.  Dkt. # 16, at 16. Defendant is correct that a forum state has a reduced interest in providing a forum for dispute resolution when the forum state's law will not be applied.  <u>See</u> <u>OMI Holdings</u>, 149 F.3d at 1096.

14

However, this factor will generally favor exercising personal jurisdiction over a defendant where one or more of the plaintiffs is a resident of the forum state.  See Pro Axess, 428 F.3d at 1280 n.7. The parties' dispute is also a matter of general contract law and accounting principles that are not unique to the laws of any particular state, and the fact that New York law will apply to this case does not substantially reduce Oklahoma's interest in providing a forum for its residents.  See Scheidt, 956 F.2d at 966.  The Court balances Oklahoma's need to provide a forum for its residents against the fact that New York law will apply to this case, and finds that this factor does not favor either party.

The third factor - plaintiffs' interest in receiving convenient and effective relief - favors defendant.  "This factor hinges on whether the [p]laintiff may receive convenient and effective relief in another forum."  AST Sports Science, 514 F.3d at 1062 (quoting Pro Axess, 428 F.3d at 1281). Although New York may be an inconvenient forum for plaintiffs in terms of location and related expenses in pursuing this litigation, plaintiffs make no argument that their ability to obtain relief against defendant would be diminished if they were required to litigate in New York.  However, at least three of the plaintiffs are Oklahoma residents and it is reasonable to assume that it is convenient and efficient for them to litigate this matter in a court located in Oklahoma.  This factor somewhat favors defendant because plaintiffs could seek relief in another forum, but this does not strongly weigh against the exercise of personal jurisdiction over defendant in this Court.

Defendant argues that the fourth factor - the interstate judicial system's interest in obtaining efficient resolution of the dispute - does not support the exercise of personal jurisdiction over defendant.  Defendant argues that all of the witnesses with knowledge of contract negotiations and accounting procedures are located in New York or New Jersey, and New York law will be applied to resolve the parties' dispute.  Dkt. # 16, at 16-17.  This factor considers "whether the forum state

15

is the most efficient place to litigate the dispute," and a court should take into account the "location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." AST Sports Science, 514 F.3d at 1062.  Defendant claims that all of the witnesses with knowledge about this dispute are located in New York, but it fails to identify any specific witnesses located in another forum.  Dkt. # 16, at 17.  The Court will not give significant weight to this consideration due to defendant's failure to provide more specific information about the number and identity of witnesses allegedly based in New York or New Jersey.  Plaintiff does not dispute that New York law applies to this case, but argues that this is not an important consideration in a straightforward contract case. Dkt. # 27, at 23.  The parties dispute where the "wrong" giving rise to the case occurred, and each party argues that the action giving rise to the case occurred where that particular party was located. Finally, the parties have not shown that piecemeal litigation will result depending on whether this case is litigated in Oklahoma, New York, or any other forum.  New York law applies to this case and some of the witnesses are likely located in New York, but defendant has not made a strong showing that litigation of this case in Oklahoma will interfere with the interstate judicial system. The Court finds that this factor somewhat favors defendant, but it does not substantially weigh against this Court's exercise of personal jurisdiction over defendant.  This factor is closely related to the fifth factor (shared interest of the states in furthering social policies), because the Court must consider whether exercising personal jurisdiction will affect the substantive social policy of another state.  This is a breach of contract case based primarily on a dispute over accounting methodology, and the social policy of any state will not be affected whether this case is heard in Oklahoma or New York.

16

The Court finds that traditional notions of fair play and substantial justice do not require dismissal of this case, because it would not be unreasonable for the Court to exercise personal jurisdiction over defendant.[2]  Defendant has shown that it would have been more convenient for defendant if plaintiffs had filed the case in New York, but defendant has not made a compelling case that it was unreasonable for plaintiffs to file the case in this Court.  Defendant knowingly entered a complex transaction involving a substantial amount of money with a group of shareholders that included three Oklahoma residents.  Defendant agreed to engage in post-closing activities knowing that plaintiffs' counsel was located in Oklahoma.  While the parties agreed to the application of New York law to resolve any disputes and some of the witnesses are located in New York or New Jersey, this does not make it unreasonable for defendant to defend against plaintiffs' claims in this Court.  As previously noted, there will be some inconvenience to some of the parties no matter where this case is litigated; however, this inconvenience does not rise to such a level that defendant's due process rights will be violated by proceeding in this Court.

**B.**

In the alternative, defendant argues that this Court should transfer venue to the Southern District of New York for the convenience of the parties and witnesses, because all of the relevant witnesses and evidence are located in that district and this Court will be required to apply New York law to plaintiffs' claims.  Plaintiffs respond that their choice of forum should be given deference and

---

[2]    This finding also disposes of defendant's argument that venue is improper in the Northern District of Oklahoma.  Under 28 U.S.C. § 1391(a), venue is proper in any judicial district where a defendant resides.  A corporate defendant resides "in any judicial district in which it is subject to personal jurisdiction."  28 U.S.C. § 1391(c).  Thus, venue in this Court is proper under § 1391.

17

that defendant has not met its burden to show that it would be substantially more convenient for all of the parties and witnesses if this case were transferred to the Southern District of New York.

Under 28 U.S.C. § 1404(a), a court may transfer a case to any judicial district in which it could originally have been filed "[f]or the convenience of parties and witnesses."  The Tenth Circuit has identified several factors that should be considered by a district court when ruling on a motion to transfer:

> the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws, the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991).  When a party files a motion to transfer venue, the moving party has the burden to prove inconvenience to the parties and witnesses.  Rivendell Forest Prods., Ltd., v. Canadian Pacific Ltd., 2 F.3d 990, 993 (10th Cir. 1993).  Unless the moving party carries its burden to prove inconvenience to the parties and witnesses and the balance is "strongly" in favor of the moving party, the plaintiff's choice of forum should not be disturbed.  Scheidt, 956 F.2d at 965.

The parties focus on two of the Chrysler Credit factors.  First, the parties dispute whether the accessibility of witnesses and other sources of proof supports defendant's request to transfer venue.  Second, the parties agree that New York law applies to plaintiffs' claims, but they disagree as to the weight this fact should be given.  Defendant also argues that plaintiffs' choice of forum should be given little weight, because only three of the eight plaintiffs reside in this judicial district.

18

The Court will first consider defendant's argument that plaintiffs' choice of forum is entitled to little or no deference, because only three of the eight plaintiffs reside in the forum state. Defendant argues that fewer than half of the plaintiffs reside in Oklahoma, and this decreases the weight that should be shown to plaintiffs' choice of forum.  Dkt. # 32, at 3 n.1.  Defendant's argument is not convincing.  Defendant cites Employers Mutual Casualty Company v. Bartile Roofs, Inc., 618 F.3d 1153 (10th Cir. 2010), to support its argument that plaintiffs' choice of forum is not entitled to deference because some of the plaintiffs reside in other states.  However, that case did not involve multiple plaintiffs and, even though the plaintiff in Employers Mutual Casualty did not reside in the forum state, the Tenth Circuit deferred to the plaintiff's choice of forum because it found that the plaintiff selected a forum with strong ties to the subject matter of the litigation.  Id. at 1168.  In this case, it would not have been possible for plaintiffs to select one forum where they all reside and three of the eight plaintiffs actually reside in Oklahoma.  Oklahoma does have an interest in providing a forum for its residents and defendant has not shown that plaintiffs' choice of forum should be given reduced deference.

Defendant argues that most of the relevant witnesses and all of the documentary evidence relevant to the accounting decision at issue in this case are located in New York or New Jersey, and that this strongly favors transfer of this case to the Southern District of New York.  However, defendant's argument is conclusory and it fails to provide any specifics about the subject matter of the New York witnesses' knowledge or the nature of the documents located in New York and New Jersey.  The Tenth Circuit directs district courts to consider not only the number of witnesses located in another forum, but also the "quality or materiality of the testimony" of the out-of-state witnesses, the willingness of those witnesses to come to the forum state, whether deposition testimony would

be satisfactory, and whether it would necessary to subpoena the out-of-state witnesses.  Scheidt, 956 F.2d at 966.  Defendant offers no evidence allowing the Court to consider any of these factors. Plaintiffs note that one key out-of-state witness, Haveron, has stated that he is willing to travel to Oklahoma, but Haveron does not state that he would be willing to travel to New York.[3]  Dkt. # 27-2, at 3.  The preliminary witness lists exchanged by the parties identify witnesses located in Oklahoma, New York, Pennsylvania, Massachusetts, and Bermuda, and this diversity of locations weighs against a finding that New York would be a substantially more convenient forum for the parties and witnesses.  See Dkt. # 32-1.  Defendant's conclusory allegations concerning the locations of witnesses and evidence and the diverse location of the parties and witnesses weigh against transferring this case to the Southern District of New York.

Defendant also argues that the Court will be required to apply New York law, and the parties would benefit if this case were heard by a judge more familiar with New York law.  The Court has already noted that this is a straightforward contract dispute, and defendant has not identified any specific issue that is novel or unique to the laws of New York.[4]  The Court does not find that the parties' choice of law provision provides any support to defendant's request to transfer venue.

It is clear that it would be more convenient for defendant to litigate this case in the Southern District of New York, but defendant has not shown that plaintiffs' choice of forum is entitled to reduced deference.  Many of the witnesses, particularly defendant's employees, are located in New York, but defendant has made no attempt to explain the significance or materiality of the New York

---

[3]      Haveron currently resides in Bermuda.  Dkt. # 31-1, at 2.

[4]      The undersigned also notes that she has been a member of the New York bar since 1977 and is familiar with New York law.

20

witnesses and defendant does not state whether the testimony of these witnesses can be obtained by deposition or other means.[5]  The choice of law issue is less significant in a breach of contract case, and defendant has not shown that this case requires the consideration of complex legal issues unique to New York contract law.  Defendant has not made any showing, let alone a strong showing, that it would be more convenient for all of the parties and witnesses if this case were tried in the Southern District of New York, and defendant's motion to transfer venue should be denied.

**IT IS THEREFORE ORDERED** that the Brief of Defendant Tower Group, Inc. in Support of Motion to Dismiss or Transfer Venue (Dkt. ## 16, 18) is **denied**.

**IT IS FURTHER ORDERED** that this case is set for status conference on **September 8, 2011 at 9:30 a.m.**  Out of state counsel may participate by telephone.  To do so, they should contact the Courtroom Deputy at 918-699-4723 no later than Tuesday, **September 6, 2011.**

**DATED** this 19th day of August, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5]    If this case should proceed to trial, the parties waived their right to a jury in the SPA and the need for live witness testimony may be somewhat reduced in a non-jury trial.  See Dkt. # 2-2, at 37.